No. 22-10145

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

BRAIDWOOD MANAGEMENT, INCORPORATED, on behalf of themselves and others similarly situated; BEAR CREEK BIBLE CHURCH,

*Plaintiffs-Appellants/Cross-Appellees*,

v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; CHARLOTTE A. BURROWS; UNITED STATES OF AMERICA; JANET DHILLON; JOCELYN SAMUELS; ANDREA R. LUCAS; KEITH E. SONDERLING, in their official capacities as Chair, Vicechair, and Commissioners of the Equal Employment Opportunity Commission; MERRICK GARLAND, U.S. Attorney General,

*Defendants-Appellees/Cross-Appellants.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
No. 4:18-cv-00824-O

## BRIEF OF AMICUS CURIAE PUBLIC CITIZEN IN SUPPORT OF DEFENDANTS-APPELLEES/CROSS-APPELLANTS

Adam R. Pulver
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

June 7, 2022                     Counsel for Amicus Curiae

## AMICUS CURIAE'S SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS PURSUANT TO FIFTH CIRCUIT RULE 29.2

---

No. 22-10145

---

BRAIDWOOD MANAGEMENT, INCORPORATED, on behalf of themselves and others similarly situated; BEAR CREEK BIBLE CHURCH,

*Plaintiffs-Appellants/Cross-Appellees*,

v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; CHARLOTTE A. BURROWS; UNITED STATES OF AMERICA; JANET DHILLON; JOCELYN SAMUELS; ANDREA R. LUCAS; KEITH E. SONDERLING, in their official capacities as Chair, Vicechair, and Commissioners of the Equal Employment Opportunity Commission; MERRICK GARLAND, U.S. Attorney General,

*Defendants-Appellees/Cross-Appellants*.

---

Pursuant to this Court's Rule 29.2 and Federal Rule of Appellate Procedure 26.1, amicus curiae Public Citizen submits this supplemental certificate of interested persons to fully disclose all those with an interest in the amicus brief and provide the required information as to their corporate status and affiliations.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case, in addition to those listed in

i

the briefs of the parties. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

A.    Amicus curiae **Public Citizen, Inc.**, is a non-profit, non-stock corporation. It has no parent corporation, and no publicly traded corporation has an ownership interest in it of any kind.

B.    Amicus curiae is represented by **Adam R. Pulver** and **Allison M. Zieve** of **Public Citizen Litigation Group**, which is a non-profit, public interest law firm that is part of **Public Citizen Foundation, Inc.**, a non-profit, non-stock corporation that has no parent corporation and in which no publicly traded corporation has an ownership interest of any kind.

/s/ Adam R. Pulver
Adam R. Pulver
*Counsel for Amicus Curiae*

June 7, 2022

# TABLE OF CONTENTS

AMICUS CURIAE'S SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS PURSUANT TO FIFTH CIRCUIT RULE 29.2 ................................................................................... i

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES ............................................................... iv

INTEREST OF AMICUS CURIAE..................................................... 1

ARGUMENT ...................................................................................... 2

I.    Federal courts lack authority to adjudicate hypothetical defenses to hypothetical claims. ...................................................... 4

II.   The impermissibly vague injunctive relief awarded confirms the nonjusticiability of this case. ........................................... 17

CONCLUSION ................................................................................... 21

CERTIFICATE OF SERVICE ........................................................... 23

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT......24

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Aetna Life Insurance Co. of Hartford, Connecticut v. Haworth,*
    300 U.S. 227 (1937) ................................................................. 5

*Atlantic & Gulf Stevedores, Inc. v. Donovan,*
    274 F.2d 794 (5th Cir. 1960) ................................................ 10

*Bostock v. Clayton County, Georgia,*
    140 S. Ct. 1731 (2020) .................................................. 2, 4, 16

*Burton v. City of Belle Glade,*
    178 F.3d 1175 (11th Cir. 1999) ............................................ 19

*Calderon v. Ashmus,*
    523 U.S. 740 (1998) ............................................................... 10

*Cason v. City of Jacksonville,*
    497 F.2d 949 (5th Cir. 1974) ............................................... 11

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993) ........................................................ 18, 19

*City of Boerne v. Flores,*
    521 U.S. 507 (1997) ............................................................... 18

*El Paso Building & Construction Trades Council v. El Paso*
    *Chapter Associated General Contractors of America,*
    376 F.2d 797 (5th Cir. 1967) ................................................. 5

*Elend v. Basham,*
    471 F.3d 1199 (11th Cir. 2006) ........................................... 20

*Flast v. Cohen,*
  392 U.S. 83 (1968) .............................................................. 12

*Henrietta D. v. Giuliani,*
  246 F.3d 176 (2d Cir. 2001) ............................................... 19

*Hillblom v. United States,*
  896 F.2d 426 (9th Cir. 1990) .............................................. 12

*International Longshoremen's & Warehousemen's Union,*
  *Local 37 v. Boyd,*
  347 U.S. 222 (1954) .................................................... 4, 9, 14

*Iron Arrow Honor Society v. Heckler,*
  464 U.S. 67 (1983) ............................................................... 8

*Janus v. AFSCME,*
  138 S. Ct. 2448 (2018) ................................................. 15, 16

*Legacy Community Health Services, Inc. v. Smith,*
  881 F.3d 358 (5th Cir. 2018) .............................................. 17

*Littell v. Houston Independent School District,*
  894 F.3d 616 (5th Cir. 2018) .............................................. 20

*Marbury v. Madison,*
  5 U.S. 137 (1803) ................................................................. 3

*National Conference of Catholic Bishops v. Smith,*
  653 F.2d 535 (D.C. Cir. 1981) ...................................... 13, 14

*New Orleans Public Service, Inc. v. Council of City of New Orleans,*
  833 F.2d 583 (5th Cir. 1987) ........................................ 10, 11

*Orix Credit Alliance, Inc. v. Wolfe,*
212 F.3d 891 (5th Cir. 2000) ........................................................ 10, 12

*Payne v. Travenol Laboratories, Inc.,*
565 F.2d 895 (5th Cir. 1978) ............................................................... 19

*Public Service Commission of Utah v. Wycoff Co.,*
344 U.S. 237 (1952) ........................................................ 7, 8, 10, 12

*Saginaw County, Michigan v. STAT Emergency Medical Services, Inc.,*
946 F.3d 951 (6th Cir. 2020) ........................................................ 3, 11

*Scott v. Schedler,*
826 F.3d 207 (5th Cir. 2016) ............................................................... 18

*Sherwin-Williams Co. v. County of Delaware, Pennsylvania,*
968 F.3d 264 (3d Cir. 2020),
*cert. denied,* 141 S. Ct. 2565 (2021) ...................................................... 15

*Steel Co. v. Citizens for a Better Environment,*
523 U.S. 83 (1998) ............................................................................... 3

*Sweeney v. Raoul,*
990 F.3d 555 (7th Cir. 2021) ........................................................ 15, 16

*Texas v. United States,*
523 U.S. 296 (1998) ............................................................................. 9

*Trustgard Insurance Co. v. Collins,*
942 F.3d 195 (4th Cir. 2019) ............................................................... 4

*United Public Workers of America (C.I.O.) v. Mitchell,*
330 U.S. 75 (1947) .................................................................... 6, 12, 14

*United States v. Congress of Industrial Organizations*,
  335 U.S. 106 (1948) .............................................................................. 13

*Wacker v. Bisson*,
  348 F.2d 602 (5th Cir. 1965) ................................................................. 5

*Wisconsin Right to Life, Inc. v. Paradise*,
  138 F.3d 1183 (7th Cir. 1998) ............................................................. 21

**Statutes and Rules**

28 U.S.C. § 2201 .................................................................................... 5

42 U.S.C. § 2000e-5(b) ..................................................................... 3, 12

42 U.S.C. § 2000e-5(f) ...................................................................... 3, 13

Federal Rule of Civil Procedure 65(d) ............................... 4, 17, 19, 20, 21

**Other Authorities**

Letter from Supreme Court Justices to George Washington
  (Aug. 8, 1793), *in* 13 The Papers of George Washington,
  Presidential Series (Christine Sternberg Patrick ed. 2007) ................ 4

## INTEREST OF AMICUS CURIAE[1]

Amicus curiae Public Citizen, Inc. is a non-profit advocacy organization with members in all 50 states. Public Citizen appears before Congress, agencies, and courts on a wide range of issues, and works for enactment and enforcement of laws to protect workers, consumers, and the public. As a plaintiff or amicus curiae, Public Citizen has often addressed issues concerning federal agency authority, standing, and justiciability.

In the decision on appeal, the district court declared that Title VII of the Civil Rights Act of 1964 does not apply to broad categories of hypothetical scenarios involving hypothetical job applicants and employees at any of the nation's employers otherwise covered by that statute. The court did so without any specific facts, as would be necessary to determine whether conduct violates Title VII or whether proscription of that conduct violates employers' rights under the First Amendment or Religious Freedom Restoration Act (RFRA).

---

[1] All parties have consented to the filing of this brief. The brief was not authored in whole or part by counsel for a party; no party or counsel for a party contributed money that was intended to fund this brief's preparation or submission; and no person other than the amicus curiae, its members, or its counsel contributed money intended to fund the brief's preparation or submission.

Public Citizen submits this brief because it is concerned that the decision below both endangers the rights of workers under Title VII and could set a dangerous precedent, allowing any regulated entity to seek an advisory opinion from a federal district court as to the abstract meaning of a statute. Public Citizen seeks to expand on the arguments of the government as to why such an opinion is barred by well-established principles of federal court jurisdiction.

## ARGUMENT

No pending charge before the Equal Employment Opportunity Commission (EEOC) alleges that plaintiff Braidwood Management discriminated against an employee or job applicant on the basis of sex, in violation of Title VII as definitively construed by the Supreme Court in *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020). The EEOC has thus had no occasion to investigate and determine (1) whether any conduct in which Braidwood has engaged violates Title VII, or (2) whether any conduct engaged in by Braidwood is outside the reach of Title VII, either as a result of the First Amendment or RFRA. Nothing in the record indicates that any such charge is imminent; to the contrary, there is no evidence in the record that *any* applicant to or employee of

Braidwood has ever been discriminated against and could thus file a charge as an aggrieved individual—a prerequisite to any private litigation under Title VII. *See* 42 U.S.C. § 2000e-5(b), (f).

Nonetheless, the district court issued declaratory and injunctive relief purporting to resolve how the First Amendment and RFRA would apply to any (and every) hypothetical charge that might be filed against Braidwood, as well as any of tens of thousands of employers with a range of religious beliefs, and how Title VII should be construed as to hypothetical conduct engaged in by any employer in the United States who "opposes homosexual or transgender behavior" for any reason. ROA.127. The court lacked authority to grant that relief. "[F]ederal courts have the power to tell parties what the law is, not what it might be in a potential enforcement action by the government." *Saginaw Cty., Mich. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 953 (6th Cir. 2020) (citing *Marbury v. Madison*, 5 U.S. 137, 177 (1803), and *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)). "That courts may not issue advisory opinions is one of the most long-standing and well-settled jurisdictional rules, reflected as early as 1793 when the Supreme Court refused to render an advisory opinion for President

Washington." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019) (citing Letter from Supreme Court Justices to George Washington (Aug. 8, 1793), in 13 The Papers of George Washington, Presidential Series 392–93 (Christine Sternberg Patrick ed. 2007)). Accordingly, the Constitution does not provide federal courts the authority to grant an "assurance that a statute does not govern hypothetical situations that may or may not make the challenged statute applicable." *Int'l Longshoremen's & Warehousemen's Union, Local 37 v. Boyd*, 347 U.S. 222, 224 (1954).

The district court's broad relief violated these principles, as well as the requirement of Federal Rule of Civil Procedure 65(d) that injunctive relief be specific. This Court should therefore vacate the district court's judgment and remand with instructions to dismiss the case for lack of jurisdiction.

## I.     Federal courts lack authority to adjudicate hypothetical defenses to hypothetical claims.

This action is not a facial challenge to Title VII or to its prohibition on discrimination on the basis of sex, as construed by the Supreme Court in *Bostock*. Rather, Braidwood sought and obtained a judgment adjudicating the applicability of defenses to hypothetical Title VII claims

based on hypothetical factual scenarios—scenarios involving tens of thousands of employers with different religious beliefs and employment practices. As both the Supreme Court and sister circuits have held in analogous cases, federal courts lack the authority to prospectively adjudicate defenses to enforcement actions based on hypothetical facts like these—whether in the guise of granting declaratory or injunctive relief.

Federal courts have jurisdiction over a declaratory judgment action only in "a case of actual controversy," 28 U.S.C. § 2201—that is, one "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937); *see also El Paso Bldg. & Const. Trades Council v. El Paso Chapter Assoc. Gen. Contractors of Am.*, 376 F.2d 797, 800 (5th Cir. 1967) (for actual controversy to exist, "the dispute must have taken on final shape so that the court can see what legal issues it is deciding, the effect of the decision on the adversaries, and a useful purpose to be achieved in deciding them"); *Wacker v. Bisson*, 348 F.2d 602, 605 (5th Cir. 1965) (applying *Haworth*). As the Supreme Court and

courts of appeals have repeatedly held, the desire to obtain an advance ruling on a defense to a hypothetical enforcement action does not create federal court jurisdiction.

**A.** Three cases decided by the Supreme Court in the first two decades following the adoption of the Declaratory Judgment Act establish this principle.

In *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 88 (1947), the Court held that federal courts lacked authority to address the constitutionality of a provision of the Hatch Act relating to federal employee participation in political campaigns as to plaintiffs who expressed no more than "a desire to act contrary to the rule against political activity," without any evidence they had actually violated the Act or were under investigation for doing so by the Civil Service Commission. In so doing, the Court held that "[i]t would not accord with judicial responsibility to adjudge, in a matter involving constitutionality, between the freedom of the individual and the requirements of public order except when definite rights appear upon the one side and definite prejudicial interferences upon the other." *Id.* at 90. As "[n]o threat of interference by the Commission with rights of these appellants

appear[ed] beyond that implied by the existence of the law and the regulations," the challengers lacked standing. *Id.* at 91.

Five years later, in *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 245 (1952), a private company requested that a federal court declare that all of its business activities were in interstate commerce and, therefore, that it was exempt from regulatory enforcement action by a Utah state agency. As the Supreme Court described the suit, the company was "ask[ing] that it win any [enforcement] case before it is commenced." *Id.* at 245. The Court held, however, that a mere desire to "establish the major premise of an exemption, not as an incident of any present declaration of any specific right or immunity, but to hold in readiness for use should the [state agency] at any future time attempt to apply any part of a complicated regulatory statute to it," did not create a controversy allowing a federal court to issue declaratory relief. *Id.* As the Court explained, whatever the facts before it at that time, "there is no assurance that changes of significance may not take place before the State decides to move." *Id.* at 246.

Rejecting the use of a declaratory judgment action before the administrative agency had assessed the facts and decided whether and how to enforce the law committed to its authority, the Supreme Court explained:

> The declaratory judgment procedure will not be used to preempt and prejudice issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review. It would not be tolerable, for example, that declaratory judgments establish that an enterprise is not in interstate commerce in order to forestall proceedings by the National Labor Relations Board, the Interstate Commerce Commission or many agencies that are authorized to try and decide such an issue in the first instance.

*Id.* at 246.[2]

---

[2] In *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67 (1983), the Supreme Court reiterated the holding of *Wycoff*. There, an all-male student organization at a private university sued the then-Secretary of Health, Education, and Welfare, seeking declaratory and injunctive relief to prevent the Secretary from interpreting its Title IX regulations in a manner that would result in the club being banned from campus. *Id.* at 69. While the case was pending, the university barred the club from campus for violating the school's non-discrimination policy, *id.* at 70–71, and the Court found the request for injunctive relief moot as a result of this intervening third-party action, *id.* at 72–73. In a footnote, the Court explained that declaratory relief was also unavailable. Citing *Wycoff*, it explained that the club lacked standing "to seek a generalized declaration of its rights against *future* actions of the Secretary." *Id.* at 71 n.1.

Again in *Boyd*, the Supreme Court held that an actual controversy was lacking where the plaintiffs sought "assurance that a statute does not govern hypothetical situations that may or may not make the challenged statute applicable." 347 U.S. at 224. There, a labor union sought declaratory and injunctive relief barring an immigration official from interpreting a provision of the Immigration and Nationality Act as "to treat aliens domiciled in the continental United States returning from temporary work in Alaska as if they were aliens entering the United States for the first time," *id.* at 223, although key facts remained uncertain, including the details of the temporary relocation to Alaska. The Court held that a determination of the scope of the Act "in advance of its immediate adverse effect in the context of a concrete case [would] involve[] too remote and abstract an inquiry for the proper exercise of the judicial function." *Id.* at 223–24; *see also Texas v. United States* 523 U.S. 296, 301 (1998) (citing *Boyd* and finding a request for declaratory relief unripe where "[t]he operation of the statute is better grasped when viewed in light of a particular application.").

As these cases establish, federal courts lack authority to adjudicate, in the abstract, as-applied defenses to enforcement actions or litigation,

even constitutional defenses, where both the possibility of an enforcement action and the facts that would give rise to such an action remain hypothetical. *See also Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (holding a request for declaratory relief that "attempts to gain a litigation advantage by obtaining an advance ruling on an affirmative defense" that may or may not be raised in future litigation does not present a case or controversy); *Atl. & Gulf Stevedores, Inc. v. Donovan*, 274 F.2d 794, 803 n.11 (5th Cir. 1960) (noting that "declaratory relief cannot be used to review or anticipate action of an administrative agency as to which a review procedure … is established").

Here, even if (contrary to the record) the facts presented by Braidwood provided a sufficient basis to apply the tests required by Title VII, RFRA, and the First Amendment, "there is no assurance that changes of significance may not take place before the [EEOC] decides to move." *Wycoff*, 344 U.S. at 246. As in *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000), where this Court found declaratory relief claims unripe, "[f]uture claims could raise any number of issues—some of which may never have been litigated in prior actions—or they could never be filed at all." *See also New Orleans Pub. Serv., Inc. v.*

*Council of City of New Orleans*, 833 F.2d 583, 588 (5th Cir. 1987) (holding that a request to enjoin future regulatory action was unripe because the validity of such "action will depend on facts not yet in existence"). As Judge Sutton explained in a recent Sixth Circuit case, "[i]t's difficult to bring an as-applied constitutional challenge before the gritty who/what/when details of enforcement have been worked out." *Saginaw*, 946 F.3d 951 at 958.

That a hypothetical scenario would raise serious concerns does not alter the fact that courts lack authority to issue advisory opinions. As this Court explained in a case "present[ing] awesome problems as First and Fourteenth Amendment rights collide," "[b]efore we adjudicate that problem of transcendent significance we should be certain that we are doing so in the light of a real Article III case and controversy on facts which really are, not what some one supposes or says them to be." *Cason v. City of Jacksonville*, 497 F.2d 949, 950, 953 (5th Cir. 1974). Here, "[t]he content of the broad class of potential claims that [the plaintiff] seeks to bar, and the certainty that any of these claims will ever be filed, are wholly unknown. Such unasserted, unthreatened, and unknown claims do not present an immediate or real threat to [the plaintiff] such that

declaratory relief is proper." *Orix*, 212 F.3d at 896; *see also Hillblom v. United States*, 896 F.2d 426, 431 (9th Cir. 1990) (citing *Flast v. Cohen*, 392 U.S. 83, 96 (1968), and holding that a request to declare "whole categories of potential future acts" inapplicable to the Northern Mariana Islands sought an impermissible advisory opinion).

Here, the relief awarded presents the outcome that *Wycoff* said would "not be tolerable," 344 U.S. at 246—forestalling proceedings by an agency tasked by Congress to assess the applicability of a statute (here, Title VII) to specific facts in the first instance. *See* 42 U.S.C. § 2000e-5(b). It does so even though the EEOC has not yet opined on—or had reason to opine on—whether Braidwood is entitled to invoke RFRA or the First Amendment as a defense to any enforcement action.

And the rationale for preemptive adjudication of Title VII defenses is even weaker in this case than in the contexts discussed in *Mitchell* and *Wycoff*. Unlike the administrative agencies discussed in those cases, the EEOC lacks authority to order private employers like Braidwood to do or not do anything, even if it *were* (at some future time, on some set of currently unknown facts) to find that Title VII applied to a set of facts. Rather, to seek to enforce its finding, the EEOC would have to bring a

claim for relief in a federal district court, where an employer would have an opportunity to raise any of the defenses that it asked the district court to resolve prospectively here. *See* 42 U.S.C. § 2000e-5(f) (prescribing procedures for enforcement by civil action). Braidwood therefore faces no risk of having its rights impaired by the EEOC without judicial imprimatur. That Braidwood would prefer to know in advance whether it is free to disregard Title VII demonstrates, and does not alter, the fact that the case seeks an advisory opinion. *See United States v. Congress of Indus. Orgs.*, 335 U.S. 106, 124 (1948) ("[T]he fact that it would be convenient to the parties and the public to know promptly whether a statute is valid, has not affected 'rigid insistence' on limiting adjudication to actual 'cases' and 'controversies.'").

**B.** The applicability of these principles is confirmed by courts of appeals' decisions rejecting requests that courts prospectively declare the applicability of defenses to hypothetical future claims. *National Conference of Catholic Bishops v. Smith*, 653 F.2d 535 (D.C. Cir. 1981), is particularly on point, as it involves both a similar procedural posture and a similar substantive controversy. There, religious organizations sued the EEOC for declaratory and injunctive relief, challenging the

13

Pregnancy Discrimination Act (PDA) and the EEOC's interpretive guidelines as violating their First Amendment and Fifth Amendment rights. *Id.* at 540. Observing that no employee had demanded the pregnancy-related benefits that the plaintiffs opposed granting and that it was thus "a matter for conjecture whether or how or under what precise circumstances plaintiffs might be in noncompliance with the PDA," the district court held that no case or controversy existed. *Id.* It also noted that the lack of any definitive statement by the EEOC as to how it would interpret and apply the statute "provide[d] good reason against adjudicating matters that may be affected in uncertain ways by future events." *Id.* at 542 (citing *Boyd* and *Mitchell*). The court also noted that "various questions of fact … require extensive refinement and elaboration in order to present a mature case." *Id.* at 544.

On appeal, the D.C. Circuit affirmed the district court, adopting that court's reasoning as its own. *Id.* at 536–37. Here, Braidwood's concern that some applicant or employee may file a Title VII charge on some ground in the future is not meaningfully distinguishable from the concerns in *National Conference of Catholic Bishops* that the EEOC might respond in a certain way to a hypothetical future PDA claim.

14

The Third Circuit reached a similar conclusion in *Sherwin-Williams Co. v. County of Delaware, Pennsylvania*, 968 F.3d 264, 267–68 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2565 (2021). There, Sherwin-Williams sought declaratory and injunctive relief to bar a county from bringing a lawsuit against it under a theory of public nuisance, claiming that such a theory of liability would violate its First Amendment and Due Process rights. The Third Circuit held that the company did not have an Article III injury based "on what it anticipates the County might allege in a hypothetical lawsuit." *Id.* at 270. Moreover, the court explained that the company's claims were not ripe where "[t]he County might sue Sherwin-Williams, but it might not." *Id.* at 272.[3]

Finally, in *Sweeney v. Raoul*, 990 F.3d 555 (7th Cir. 2021), in the wake of the Supreme Court's decision in *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), a public-sector union sued Illinois state officials, arguing that the union's constitutional rights would be violated if, as a result of

---

[3] Importantly, the possibility of litigation in *Sherwin-Williams* was less speculative than here: The acts that the company feared it would be sued over had already taken place, and the county had already retained counsel for potential litigation. In contrast, Braidwood has not pointed to any lesbian, gay, bisexual, or transgender employee or applicant that exists.

the union's state-law duty of fair representation, it was forced to represent a worker who had chosen not to pay "fair share" fees. *Id*. at 557. The Seventh Circuit recognized that the union's concern was not frivolous. Nonetheless, because the union had not "identif[ied] a nonmember who has demanded representation in a grievance proceeding," the court held that it could not opine on the hypothetical question. *Id*. at 560. "That [the union] s[aw] such demands around the corner" was not enough to establish "an imminent injury." *Id*. "To conclude otherwise would be tantamount to saying that *Janus* itself created a follow-on Case or Controversy for all public unions with nonmembers who decline to pay fair share fees." *Id*. The union's "real gripe," the Seventh Circuit recognized, "is with *Janus* and what the union fears the Supreme Court's decision portends." *Id*. But while "understanding [the union]'s desire for additional legal certainty after *Janus*, federal courts do not deal in advice." *Id*. at 561.

As in *Sweeney*, the "real gripe" of the plaintiffs here is a Supreme Court decision and what they "fear[] the Supreme Court's decision portends." *Id*. at 560. The decision in *Bostock*, however, did not "itself create[] a follow-on Case or Controversy," *id.*, for all employers who,

16

"oppose homosexual or transgender behavior," ROA.1727. Braidwood has shown neither a pending charge with the EEOC nor even an imminent application of its policies against a lesbian, gay, bisexual, or transgender applicant or employee. The district court lacked authority to adjudicate Braidwood's hypothetical defenses to hypothetical claims.

## II. The impermissibly vague injunctive relief awarded confirms the nonjusticiability of this case.

As with a request for declaratory relief, an abstract risk of harm does not make a request for injunctive relief justiciable. *See, e.g.*, *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 370 (5th Cir. 2018). Thus, for the reasons discussed above, the district court lacked authority to adjudicate Braidwood's request for injunctive relief. The injunctive relief awarded by the district court is also flawed because it so vague as to constitute little more than an impermissible "obey the law" injunction. That the bare factual record here made a more specific injunction impossible highlights that this case is nonjusticiable.

Federal Rule of Civil Procedure 65(d) specifies that an injunction must "state its terms specifically" and "describe in reasonable detail— and not by referring to the complaint or other document—the act or acts restrained or required." Under this standard, "an ordinary person

reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (cleaned up).

Neither of the two injunctions contained in the Court's amended judgment meets this standard. As to the RFRA and First Amendment claims, the judgment states:

> Defendants are enjoined from enforcing Title VII against Braidwood and members of the Religious Business-Type Class in a manner that limits their right to establish employment policies in accordance with sincerely held religious beliefs.

ROA.1727. For the "codes of conduct" claim, the judgment states:

> Defendants are enjoined from enforcing Title VII against Braidwood and members of the All Opposing Employer Class in a manner that limits their right to create and maintain sex-neutral codes of conduct that do not target homosexual or transgender employees.

*Id.*

Both paragraphs simply restate legal standards. As the district court correctly stated, the first question asked as part of RFRA analysis is whether a government action "would substantially burden [a plaintiff's] sincere exercise of religion." ROA.1745 (citing *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997)). Whether and to what extent a law burdens religious practice is also one of the central questions governing

a Free Exercise claim. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993). The district court's injunction essentially restates the requirement.

As to its "codes of conduct" injunction, the district court similarly restated the law. In general terms, the proposition that a "sex-neutral" policy that does not "target" lesbian, gay, bisexual, or transgender employees does not violate Title VII is not particularly controversial. Whether any given policy is actually "sex-neutral" or targets LGBT employees, however, is a complicated factual and legal question—and one as to which the injunction is silent. *Compare with Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 897 (5th Cir. 1978) (finding injunction barring defendants from "discriminating on the basis of color, race, or sex in employment practices or conditions of employment" was an impermissible "obey the law" injunction); *see also Henrietta D. v. Giuliani*, 246 F.3d 176, 182 (2d Cir. 2001) (stating that an order requiring defendants to "meet their obligations under the ADA and Rehabilitation Act … would not pass muster under Rule 65(d)"); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1200 (11th Cir. 1999) (holding that injunction prohibiting city from discriminating on the basis of race "would do no

more than instruct the City to 'obey the law'" and thus would violate Rule 65(d).

The vagueness of the injunctive relief awarded reflects that no possible relief in this action *could* comply with Rule 65(d): Braidwood does not seek to enjoin the EEOC from doing anything specific, but rather from taking actions in an amorphous set of hypothetical fact patterns, against employers with countless permutations of "employment policies" and "sincerely held religious beliefs." The district court could not apply the relevant legal standards to each of those scenarios and thus could only direct the EEOC to do so itself. That is the quintessential advisory opinion. *Cf. Littell v. Houston Indep. Sch. Dist.,* 894 F.3d 616, 631 (5th Cir. 2018) (suggesting a "pleading-stage dismissal" may be appropriate where "there is no conceivable way to frame the requested relief in adequately specific terms").

The Eleventh Circuit addressed a similar situation in *Elend v. Basham*, 471 F.3d 1199, 1210 (11th Cir. 2006), holding that the inability to draft specific relief indicates a lack of redressability. There, the plaintiffs had asked the court to order the Secret Service not to violate their constitutional rights in yet-to-be planned protests at presidential

speeches. The Eleventh Circuit explained that "the inchoate nature of the claim provides an insurmountable obstacle for a court to fashion an injunction that accomplishes anything beyond abstractly commanding the Secret Service to obey the First Amendment," given that any narrower injunction would require a balancing and assessment of specific facts. *Id.* at 1209. Beyond Rule 65(d) specificity concerns, the court held that "promulgating an order in the face of such overwhelming ambiguity would amount to an abdication of [its] duty to only adjudicate actual cases or controversies." *Id.* at 1210.

The same logic applies here, where the district court could only order the EEOC to interpret the law correctly in future, unknown scenarios. "When the only way to make relief effective is to write an order so broad that it becomes advisory …, a court can be sure that the case is not justiciable." *Wisconsin Right to Life, Inc. v. Paradise*, 138 F.3d 1183, 1187 (7th Cir. 1998).

## CONCLUSION

For the foregoing reasons, the Court should vacate the judgment of the district court and remand with instructions to dismiss for lack of jurisdiction.

Respectfully submitted,

/s/ Adam R. Pulver
Adam R. Pulver
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Attorneys for Amicus Curiae

June 7, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2022, the foregoing brief has been served through this Court's electronic filing system upon counsel for the parties.

/s/ Adam R. Pulver
Adam R. Pulver
*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and the Rules of this Court, it contains 4,438 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Century Schoolbook.

June 7, 2022

/s/ Adam R. Pulver
Adam R. Pulver
*Counsel for Amicus Curiae*