Case No. 22-10145

---

## In the United States Court of Appeals
## for the Fifth Circuit

---

BRAIDWOOD MANAGEMENT, INCORPORATED, on behalf of themselves
and others similarly situated; BEAR CREEK BIBLE CHURCH,
*Plaintiffs-Appellants/Cross-Appellees,*

v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; CHARLOTTE A.
BURROWS; UNITED STATES OF AMERICA; JANET DHILLON;
JOCELYN SAMUELS; ANDREA R. LUCAS; KEITH E. SONDERLING, in
their official capacities as chair, vice chair, and commissioners of the Equal
Employment Opportunity Commission; MERRICK GARLAND, U.S.
Attorney General,
*Defendants-Appellees/Cross-Appellants*

---

On Appeal from the Northern District of Texas, Fort Worth Division
Trial Court Cause No. 4:18-cv-0824

---

**Brief of *Amici Curiae* Maureen Carroll, Christine Bartholomew,
Andrew Bradt, Brooke Coleman, Robin Effron, Myriam Gilles,
Robert Klonoff, Suzette Malveaux, David Marcus, Elizabeth
Porter, D. Theodore Rave, Elizabeth Schneider, and Adam
Zimmerman in support of Defendants-Appellees/Cross
Appellants**

---

Jane Langdell Robinson, TBN 24062970
AHMAD, ZAVITSANOS & MENSING
1221 McKinney St., Suite 2500
Houston, Texas 77010
Phone: (713) 655-1101
jrobinson@azalaw.com
*Counsel for* Amici Curiae

**SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS**

Case No. 22-10145
*Braidwood Management, Inc.* et al. *v. Equal Employment Opportunity Commission,* et al.

The undersigned counsel of record for *amici curiae* certifies the following additional persons and entities have an interest in the outcome of this case, as required by Fifth Circuit Rule 28.2.1. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Maureen Carroll, *amicus curiae.*

Christine P. Bartholomew, *amicus curiae.*

Andrew D. Bradt, *amicus curiae.*

Brooke D. Coleman, *amicus curiae.*

Robin Effron, *amicus curiae.*

Myriam Gilles, *amicus curiae.*

Robert H. Klonoff, *amicus curiae.*

Suzette Malveaux, *amicus curiae.*

David Marcus, *amicus curiae.*

Elizabeth Porter, *amicus curiae.*

D. Theodore Rave, *amicus curiae.*

Elizabeth M. Schneider, *amicus curiae.*

Adam Zimmerman, *amicus curiae.*

Jane Robinson and AHMAD, ZAVITSANOS & MENSING, P.C., *Counsel for* Amici Curiae.

*/s/ Jane Langdell Robinson*
Jane Langdell Robinson

# TABLE OF CONTENTS

**Supplemental Certificate of Interested Persons**............................**2**

**Table of Contents** ......................................................................**3**

**Table of Authorities** ..................................................................**4**

**Interest of Amici Curiae**............................................................**7**

**Summary of Argument**................................................................**9**

**Argument**................................................................................**12**

I.  The Traditional Version of Ascertainability, Which Requires a Clear and Objective Class Definition, Applies to Classes Certified Under Rule 23(b)(2). ......................................................................... 12

    A.  Although some courts have applied a stricter form of ascertainability to classes certified under Rule 23(b)(3), the requirement of a clear and objective class definition applies to classes certified under Rule 23(b)(2)......................... 12

    B.  The District Court did not provide a clear and objective definition for either of the classes it certified. ............................................ 18

II.  The Absence of a Clear and Objective Class Definition Is Fatal to the Requirements Imposed by Rule 23(a) and Rule 23(b)(2) ................ 22

    A.  Unless the contours of a class are reasonably clear, it will not be possible for a court to conclude that the class satisfies the commonality requirement. ......................................................... 22

    B.  Unless the contours of a class are reasonably clear, it will not be possible for a court to conclude that the class satisfies Rule 23(b)(2)................................................................................. 26

III.  The Absence of a Clear and Objective Class Definition Impedes the Orderly and Effective Administration of the Judgment in a Class Action Certified Under Rule 23(b)(2) ............................................. 30

**Conclusion** .............................................................................**33**

**Certificate of Compliance**......................................................**33**

**Certificate of Service** .............................................................**34**

## TABLE OF AUTHORITIES

### Cases

*Almon v. Conduent Bus. Servs.*, LLC,
No. SA-19-CV-01075-XR, 2022 WL 902992 (W.D. Tex. Mar. 25,
2022) .................................................................................... 14

*Bear Creek Bible Church v. Equal Emp. Opportunity Comm'n*,
No. 4:18-CV-00824-O, 2021 WL 5449038 (N.D. Tex. Nov. 22,
2021) ............................................................................... passim

*Bear Creek Bible Church v. Equal Emp. Opportunity Comm'n*,
No. 4:18-CV-00824-O, at 2 (N.D. Tex. Jan. 12, 2022) ....................... 19, 21

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .............................................. 9, 18

*Chaffee v. Johnson*,
229 F. Supp. 445 (S.D. Miss. 1964), *order aff'd*, 352 F.2d 514 (5th
Cir. 1965) ................................................................................. 14

*Cherry v. Dometic Corp.*,
986 F.3d 1296 (11th Cir. 2021) .............................................. 18

*Cooper v. Fed. Rsrv. Bank of Richmond*,
467 U.S. 867 (1984) ................................................................. 30

*DeBremaecker v. Short*,
433 F.2d 733 (5th Cir. 1970) ................................... 13, 14, 15, 20

*In re Monumental Life Ins. Co.*,
365 F.3d 408 (5th Cir. 2004) .................................................. 17

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017) ................................................... 18

*In re Rodriguez*,
695 F.3d 360 (5th Cir. 2012) .................................................. 27

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) ...................................... 15, 24, 25

*John v. Nat'l Sec. Fire & Cas. Co.*,
  501 F.3d 443 (5th Cir. 2007)............................................................ 14, 22

*M. D. v. Abbott*,
  907 F.3d 237 (5th Cir. 2018) ....................................................................28

*M.D. v. Perry*,
  294 F.R.D. 7 (S.D. Tex. 2013)................................................................. 23

*M.D. v. Perry*,
  675 F.3d 832 (5th Cir. 2012) ............................................................ 23, 27

*Messner v. Northshore University HealthSystem*,
  669 F.3d 802 (7th Cir. 2012)................................................................... 25

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ........................................................ 10, 16, 18

*O'Shea v. Littleton*,
  414 U.S. 488 (1974)................................................................................ 24

*Shelton v. Bledsoe*,
  775 F.3d 554 (3d Cir. 2015) .....................................................................17

*Steimel v. Wernert*,
  823 F.3d 902 (7th Cir. 2016)....................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).........................................................................passim

*Yates v. Collier*,
  868 F.3d 354 (5th Cir. 2017)....................................................... 27, 28, 29

## Rules

FED. R. CIV. P. 1 ...................................................................................... 7

FED. R. CIV. P. 23(a) .......................................................................... 10, 22

FED. R. CIV. P. 23(a)(2) ...................................................................... 11, 23

FED. R. CIV. P. 23(b)(2) .................................................................passim

FED. R. CIV. P. 23(b)(3) ..................................................................passim

Fed. R. Civ. P. 23(c)(1)(B) .......................................................13, 18

**Treatises and Law Review Articles**

Christine P. Bartholomew, *E-Notice*, 68 Duke L.J. 217 (2018) ...................17

Christine P. Bartholomew, *The Failed Superiority Experiment*, 69 Vand. L. Rev. 1295 (2016) ....................................................... 18

Robert G. Bone, *Justifying Class Action Limits: Parsing the Debates over Ascertainability and Cy Pres*, 65 U. Kan. L. Rev. 913, 923–28 (2017) .................................................................................9, 15

Maureen Carroll, *Aggregation for Me, but Not for Thee: The Rise of Common Claims in Non-Class Litigation*, 36 Cardozo L. Rev. 2017 (2015) ................................................................................... 32

Maureen Carroll, *Class Action Myopia*, 65 Duke L.J. 843 (2016) .............. 16

Robert H. Klonoff, *Class Actions Part II: A Respite from the Decline*, 92 N.Y.U. L. Rev. 971, 979 (2017) ............................................ 16

Suzette M. Malveaux, *The Modern Class Action Rule: Its Civil Rights Roots and Relevance Today*, 66 U. Kan. L. Rev. 325, 388 (2017) ........... 16

Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 Colum. L. Rev. 149 (2003) ................................... 32

William B. Rubenstein, 1 Newberg on Class Actions (5th ed. 2021)... 19, 24

### INTEREST OF AMICI CURIAE[1]

Amici are law professors with expertise in the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure. Amici have written extensively about class action litigation, including the use of class actions in civil rights cases seeking declaratory or injunctive relief. Together, we share an interest in ensuring that the Federal Rules of Civil Procedure continue to be construed so as to ensure the "just, speedy and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1.

Maureen Carroll is a Professor of Law at the University of Michigan Law School.

Christine P. Bartholomew is a Professor of Law at the University at Buffalo School of Law.

Andrew D. Bradt is a Professor of Law and the Faculty Director of the Civil Justice Research Initiative at the University of California, Berkeley School of Law.

Brooke D. Coleman is a Professor of Law, the Special Assistant to the Vice President for Diversity and Inclusion, the Associate Dean of Research

---

[1] No counsel for a party authored any part of this brief, and no person other than amici and their counsel made any monetary contribution toward the preparation or submission of this brief. All parties have consented to the filing of this brief.

and Faculty Development, and a Faculty Fellow of the Fred T. Korematsu Center for Law and Equality at the Seattle University School of Law.

Robin Effron is a Professor of Law and Co-Director of the Dennis J. Block Center for the Study of International Business Law at Brooklyn Law School.

Myriam Gilles is the Paul R. Verkuil Research Chair and Professor of Law at Cardozo Law School.

Robert H. Klonoff is the Jordan D. Schnitzer Professor of Law and the Dean of the Law School from 2007–2014 at the Lewis & Clark Law School.

Suzette Malveaux is the Moses Lasky Professor of Law and Director of the Byron R. White Center for the Study of American Constitutional Law at the University of Colorado Law School.

David Marcus is a Professor of Law at the University of California Los Angeles School of Law.

Elizabeth Porter is the Interim Toni Rembe Dean and Professor of Law at the University of Washington School of Law.

D. Theodore Rave is a Professor of Law at the University of Texas School of Law.

Elizabeth M. Schneider is the Rose L. Hoffer Professor of Law at Brooklyn Law School.

Adam Zimmerman is a Professor of Law at Loyola Law School Los Angeles.

Amici file this brief in their individual capacity as scholars and provide institutional affiliation solely for purposes of identification.

## SUMMARY OF ARGUMENT

In its class certification order, the District Court demonstrated confusion over the extent to which an "ascertainability" requirement applies to classes certified under Rule 23(b)(2). *Compare Bear Creek Bible Church v. Equal Emp. Opportunity Comm'n*, No. 4:18-CV-00824-O, 2021 WL 5449038, at *15 (N.D. Tex. Nov. 22, 2021) (Am. Mem. Op. & Order) (hereinafter "Order") ("While not a requirement of Rule 23, courts only certify classes ascertainable under objective criteria.") *with id.* at *15 n.17 ("Ascertainability may not be applicable in the Rule 23(b)(2) context."); *see* FED. R. CIV. P. 23(b). That confusion appears to have resulted, in part, from the "widely varied meanings" that different courts have attributed to the term "ascertainability." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017); *see also* Robert G. Bone, *Justifying Class Action Limits: Parsing the Debates over Ascertainability and Cy Pres*, 65 U. KAN. L. REV. 913, 923–28 (2017) (discussing different versions of the ascertainability requirement). In recent years, some courts have referred to "ascertainability" while

imposing newly heightened requirements for classes certified under Rule 23(b)(3), at times without acknowledging the extension of the term beyond its original meaning. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015).

Amici submit this brief to clarify the requirements applicable to the definition of a class certified under Rule 23(b)(2), as well as the importance of those requirements for the proper operation of the class action rule. In doing so, we make three points.

First, the traditional version of ascertainability requires a clear and objective class definition, regardless of which provision of Rule 23(b) is involved. Some courts have adopted a heightened version of ascertainability, which requires a reliable and administratively feasible mechanism for generating a list of absent class members, in the context of classes certified under Rule 23(b)(3). But that newer conception of ascertainability is not at issue in this case. The traditional requirement of a clear and objective class definition applies to all class actions, including those certified under Rule 23(b)(2). The District Court's class certification decision in this case fell short of that lower bar.

Second, a clear and objective class definition is essential to ensuring that a proposed class satisfies the requirements of Rule 23(a) and Rule

23(b)(2). If the contours of a class are ambiguous, it will not be possible for a court to conclude that "there are questions of law or fact common to the class," as required by Rule 23(a)(2), or that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," as required by Rule 23(b)(2). The District Court's analysis in this case exemplifies these problems, which are fatal to the certification of the two classes at issue here.

Third, a clear and objective class definition is important to the orderly and effective administration of the judgment in a certified Rule 23(b)(2) class action. An ambiguous class definition creates difficulties for subsequent courts, which may find themselves unable to determine the scope of the judgment's preclusive effect; for claimants, who may find themselves unable to determine whether they are entitled to the benefits of any injunction the initial court has issued; and for defendants, who may find themselves at risk of contempt sanctions for violating a judgment whose contours they cannot discern. Unless it is vacated, the District Court's judgment in this case will undoubtedly have those effects.

Amici emphasize that the District Court's decision fails to comply with well-established requirements for the certification of class actions under Rule 23(b)(2) of the Federal Rules of Civil Procedure. Accordingly, this case

presents no occasion to modify this circuit's case law with respect to those requirements.

## ARGUMENT

## I.  The Traditional Version of Ascertainability, Which Requires a Clear and Objective Class Definition, Applies to Classes Certified Under Rule 23(b)(2).

### A.  Although some courts have applied a stricter form of ascertainability to classes certified under Rule 23(b)(3), the requirement of a clear and objective class definition applies to classes certified under Rule 23(b)(2).

Rule 23(b)(2) provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). By contrast, Rule 23(b)(3) applies when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Of the two provisions, only Rule 23(b)(3) "authorize[s] class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011).

In keeping with the broader reach of Rule 23(b)(3), some of the

procedural protections afforded to Rule 23(b)(3) classes—including "predominance, superiority, mandatory notice, and the right to opt out"—do not apply to classes certified under Rule 23(b)(2). *Wal-Mart*, 564 U.S. at 362. Because a judgment in either type of class action will extinguish the absent class members' claims, however, a number of other procedural requirements apply to both. *See id.* at 349 (because "[t]he class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," anyone seeking class certification "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.") (emphasis in the original). The district court's obligation to define the class falls into this latter category. *See* FED. R. CIV. P. 23(c)(1)(B).

The class action rule explicitly requires that "[a]n order that certifies a class action"—regardless of which provision of Rule 23(b) is involved—"must define the class and the class claims, issues, or defenses." FED. R. CIV. P. 23(c)(1)(B). This requirement was added to the text of Rule 23 in 2003, but long before then, courts had recognized as "elementary" the proposition that "in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).

This "elementary" proposition reflects the traditional approach to ascertainability, under which courts have required a clear and objective class definition. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). This Court has applied that traditional requirement, refusing to certify classes whose boundaries are "amorphous" or "imprecise." *Id.*; *see also Almon v. Conduent Bus. Servs.*, LLC, No. SA-19-CV-01075-XR, 2022 WL 902992, at *23 (W.D. Tex. Mar. 25, 2022) ("ascertainability depends on the objectivity of the criteria defining the class, not the degree of specificity of the relevant information or the resources required to attain it"); *Chaffee v. Johnson*, 229 F. Supp. 445, 448 (S.D. Miss. 1964), *order aff'd*, 352 F.2d 514 (5th Cir. 1965) ("Clearly this is not a proper class action. The vague and indefinite description of the purported class depends upon the state of mind of a particular individual, rendering it difficult, if not impossible, to determine whether any given individual is within or without the alleged class.").

This Court's decision in *DeBremaecker v. Short*, 433 F.2d 733 (5th Cir. 1970), exemplifies the traditional approach. The plaintiffs in that case sought certification under Rule 23(b)(2) of a class defined as "residents of this State active in the 'peace movement' who have been harassed and intimidated as well as those who fear harassment and intimidation in exercising their First

Amendment right of free expression in the form of passing out leaflets in furtherance of their cause." *Id.* at 734. This Court held that the proposed definition failed to satisfy the requirement of an "adequately defined and clearly ascertainable" class. *Id.* Among other things, the Court objected to "the patent uncertainty of the meaning of 'peace movement' in view of the broad spectrum of positions and activities which could conceivably be lumped under that term." *Id.*

As *DeBremaecker* illustrates, courts have long applied the traditional version of the ascertainability requirement to classes certified under Rule 23(b)(2). *See also, e.g., Steimel v. Wernert*, 823 F.3d 902, 917–18 (7th Cir. 2016) (affirming the denial of class certification under Rule 23(b)(2) "[b]ecause the class definition was too vague"); *J.D. v. Azar*, 925 F.3d 1291, 1319 (D.C. Cir. 2019) (rejecting the proposition that a Rule 23(b)(2) class could be defined in terms of individuals' "ideological convictions," because such a definition would impermissibly "turn on a person's subjective (and possibly unannounced) beliefs").

More recently, some courts have adopted a different version of ascertainability, which scholars have variously described as "strict,"[2]

---

[2] Robert G. Bone, *Justifying Class Action Limits: Parsing the Debates over Ascertainability and Cy Pres*, 65 U. Kan. L. Rev. 913 (2017).

"heightened,"[3] or "enumerated"[4] ascertainability. Like the traditional version, this newer version of ascertainability requires a clear and objective class definition. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 662 (7th Cir. 2015) (noting that the prong of the Third Circuit's ascertainability standard requiring a class to be "defined with reference to objective criteria" is "consistent with long-established law").

Unlike the traditional version, the newer version additionally requires plaintiffs to show that they have a reliable and administratively feasible means of generating a list of individual class members. *Id.* As the Seventh Circuit has explained, courts adopting this approach "have moved beyond examining the adequacy of the class definition itself to examine the potential difficulty of identifying particular members of the class and evaluating the validity of claims they might eventually submit." *Id.*

The newer version of ascertainability has been motivated by concerns specific to the Rule 23(b)(3) context, including the logistics of enabling opt-

---

[3] Robert H. Klonoff, *Class Actions Part II: A Respite from the Decline*, 92 N.Y.U. L. Rev. 971, 979 (2017); Suzette M. Malveaux, *The Modern Class Action Rule: Its Civil Rights Roots and Relevance Today*, 66 U. Kan. L. Rev. 325, 388 (2017).

[4] Maureen Carroll, *Class Action Myopia*, 65 Duke L.J. 843, 883 (2016).

outs and the distribution of individualized monetary relief.[5] *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015). Recognizing the specificity of those concerns, courts that have adopted the newer version of ascertainability have generally applied it only to classes certified under Rule 23(b)(3). *Id.* The Third Circuit, for example, has held that "a judicially-created implied requirement of ascertainability—that the members of the class be capable of specific enumeration—is inappropriate for (b)(2) classes." *Id.* But the court hastened to add that it was not "jettisoning the basic requirement that there must be a 'class' in a class action." *Id.* at 563. The court reaffirmed that, notwithstanding the inapplicability of the newer version of ascertainability, class certification under Rule 23(b)(2) continues to require a "readily discernible, clear, and precise statement of the parameters defining the class." *Id.*

---

[5] In an echo of these concerns, this Court once suggested that the precision of the class definition might hold more importance "[w]here notice and opt-out rights are requested." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004). *But see* Christine P. Bartholomew, *E-Notice*, 68 DUKE L.J. 217, 265 (2018) (discussing how heightened "[a]scertainability and tailored notice requirements depart from the purpose of Rule 23 and conflict with *Mullane* by encouraging courts to approve unnecessarily outdated notice plans"). *In re Monumental Life Ins. Co.* upheld the certification of a Rule 23(b)(2) class that sought individualized monetary relief. The decision predated *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), which clarified that only Rule 23(b)(3) classes may seek such relief.

The heightened ascertainability requirement is controversial, even in the context of Rule 23(b)(3) class actions, and several circuits have declined to adopt it. Christine P. Bartholomew, *The Failed Superiority Experiment*, 69 Vand. L. Rev. 1295, 1307–08 (2016); *see, e.g., In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017); *Mullins*, 795 F.3d 654 (7th Cir. 2015); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021). This case presents no occasion to wade into that thicket. It is uncontroversial that a class should be clearly and objectively defined, regardless of the type of class at issue, and regardless of whether the jurisdiction in question has adopted a heightened version of ascertainability for Rule 23(b)(3) classes. As explained below, the District Court's class certification decision in this case fell short of that traditional bar.

### B.    The District Court did not provide a clear and objective definition for either of the classes it certified.

The District Court failed to provide an explicit definition for either the "Religious Business-Type Employers Class" or the "All Opposing Employers Class" in its Amended Memorandum Opinion and Order, its Amended Class Certification Order, or its Amended Final Judgment. The District Court thus failed to comply with the most basic requirement, unambiguously set forth in Rule 23(c)(1)(B), that "[a]n order that certifies a class action must define

the class." The District Court's class certification order and subsequent judgment do contain some language characterizing each class. But neither satisfies the requirement of a clear and objective class definition.

With respect to the "All Opposing Employers Class," the plaintiffs proposed a class defined as "every employer in the United States that opposes homosexual or transgender behavior for religious or nonreligious reasons." Order at *14. In its decision certifying the class, the District Court appeared to adopt this proposed definition without modification. *Id.* at *15. The District Court's judgment also appears to adopt the plaintiffs' proposed definition, stating that "[t]he Class consists of employers who oppose homosexual or transgender behavior on religious and nonreligious bases." *Bear Creek Bible Church v. Equal Emp. Opportunity Comm'n*, No. 4:18-CV-00824-O, at 2 (N.D. Tex. Jan. 12, 2022) (Am. Final Judgment) (hereinafter "Judgment").

The "All Opposing Employers Class" is impermissibly defined by the purported class members' state of mind—whether they "oppose[] homosexual or transgender behavior." The class thus fails the basic requirement that it be objectively defined. *See* William B. Rubenstein, 1 NEWBERG ON CLASS ACTIONS § 3:5 (5th ed. 2021) ("[C]ourts avoid certifying classes where the class definition depends on the class members' state of

mind [because] this state is generally a 'subjective' factor."). Moreover, the contours of the "All Opposing Employers Class" are impermissibly vague. There are countless activities that some employers would describe as "homosexual or transgender behavior," but other employers would not. (Consider, for example, an employee who marries an individual who uses they/them pronouns.) With regard to each of those activities, there are countless stances that some employers would describe as "oppos[ition]" to the activity, but other employers would not. (For example, an employer might decline to provide spousal benefits, instead providing an equivalent amount as an annual bonus.) Like the phrase "peace movement," the phrase "opposes homosexual or transgender behavior" involves "patent uncertainty . . . in view of the broad spectrum of positions and activities which could conceivably be lumped under that term." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).

With respect to the "Religious Business-Type Employers Class," the problems run even deeper. The plaintiffs proposed a class consisting of "every employer in the United States that opposes homosexual or transgender behavior for sincere religious reasons." Order at *14. To the extent that the class definition incorporates the language about "oppos[ing] homosexual or transgender behavior," it suffers from the ambiguities

discussed above.

But the District Court appeared to modify the proposed class, asserting in its Amended Memorandum Opinion and Order that "members of the Religious Business-Type Employers Class are for-profit entities producing a secular product. While faith may be a motivating part of the businesses' missions, their incorporating documents generally do not include a religious purpose. For an employer like [named plaintiff] Braidwood, religion plays an important role, but is not the sole mission of the organization." Order at *14. The District Court repeated this modified class definition in its Amended Class Certification Order and Amended Final Judgment. *Bear Creek Bible Church v. Equal Emp. Opportunity Comm'n*, No. 4:18-CV-00824-O, at 2 (N.D. Tex. Jan. 12, 2022) (Order on Plaintiffs' Motion to Amend/Correct Class Certification Order); Judgment at 1. This ambiguity—as to whether the language about "oppos[ing] homosexual or transgender behavior" is part of the class definition—is itself grounds to vacate the District Court's class certification decision.

Moreover, in light of the District Court's modification, other ambiguities abound. For example, how would an outside observer determine whether "religion plays an important role" in a particular organization, or whether "faith may be a motivating part of" that organization's mission? This

definition fails to establish reasonably clear boundaries for the class, leaving its membership impermissibly "amorphous" and "imprecise." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). It is almost as though the District Court tried to define the class as "organizations that are similar in some ways to one of the named plaintiffs." But such analogical hints are insufficient for future courts and parties to determine exactly whose legal rights have been finally adjudicated and who is thus bound by the preclusive effect of the class action judgment.

## II. The Absence of a Clear and Objective Class Definition Is Fatal to the Requirements Imposed by Rule 23(a) and Rule 23(b)(2).

### A. Unless the contours of a class are reasonably clear, it will not be possible for a court to conclude that the class satisfies the commonality requirement.

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Instead, class certification "is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350–51. If a court cannot discern the boundaries of the class—and thus the characteristics of the legal and factual issues involved in the class-wide claims or defenses— that "rigorous analysis" will not be possible.

Consider the commonality prerequisite, which requires that "there are

questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). As the Supreme Court has explained, commonality is satisfied only if the class members' claims depend upon "a common contention" such that "the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 351. How could a court be assured that a contention mattered to "each one of the claims" of class members if it could only guess at the characteristics those class members and their claims shared?

As this Court has explained, a district court analyzing commonality "must explain its reasoning with specific reference to the claims, defenses, relevant facts, and applicable substantive law raised by the class claims, in order to ensure that dissimilarities within the proposed class do not have the potential to impede the generation of common answers." *M.D. v. Perry*, 675 F.3d 832, 843 (5th Cir. 2012). An overbroad class cannot survive this analysis; if the resolution of different class members' claims would depend on entirely different legal or factual questions, the class will not satisfy commonality. *Compare M.D. v. Perry*, 675 F.3d at 848 (vacating the certification of a class that "attempted to aggregate a plethora of discrete claims . . . into one 'super-claim'") *with M.D. v. Perry*, 294 F.R.D. 7, 31 (S.D. Tex. 2013) (creating a general class and subclasses, the contours of which

were defined by "the policy that the Plaintiffs allege is causing the harm and the group of children . . . they allege are being harmed by that policy"). And unless the class definition is reasonably clear, a court will not be able to determine whether the class is overbroad.

Consider a putative class action challenging the government's practice of barring pregnant, unaccompanied immigrant minors from obtaining pre-viability abortions. *J.D. v. Azar*, 925 F.3d 1291, 1299 (D.C. Cir. 2019). It would have been impermissible to define the class as, for example, "all unaccompanied minors who oppose restrictions on their abortion rights." Such a class could have been interpreted to include a great number of individuals who were not and never would become pregnant, and whose claims would therefore not have shared any common questions of law or fact with pregnant unaccompanied minors.[6] Instead, the class was defined as "all

---

[6] If individuals who were not and never would become pregnant were the named plaintiffs in a challenge to the government's policy, a court would analyze whether they had standing. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). In the context of unnamed members of a class seeking injunctive or declaratory relief, the analysis instead relates to the class certification requirements and the proper definition of the class. *See* William B. Rubenstein, 1 NEWBERG ON CLASS ACTIONS § 2:3 (5th ed. 2021) ("Most courts concerned about the standing of absent class members are in fact concerned about whether the class is properly defined . . . . [T]he court's task at certification is to ensure that the class is not 'defined so broadly as to include a great number of

*pregnant*, unaccompanied immigrant minor children (UCs) who are or will be in the legal custody of the federal government." *Id.* at 1305 (emphasis added). The D.C. Circuit upheld the certification of that class, reasoning that it consisted of class members whose claims were grounded in their own pregnancies, regardless of whether they intended to exercise their abortion rights. *Id.* at 1315.

Just as a class of unaccompanied immigrant minors who "oppose restrictions on their abortion rights" could be interpreted to include individuals who were not and never would become pregnant, a class of employers that "oppose[] homosexual or transgender behavior" can be interpreted to include employers who have not adopted and never will adopt any policies that would interfere with their employment of gay or transgender individuals. For example, the employer might "oppose homosexual or transgender behavior" but not deem it proper to adopt employment policies that reflect its opposition, rejecting the notion that mere employment of gay or transgender individuals makes the employer complicit in that behavior. Yet the presumed existence of such employment

---

members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct.'" (quoting *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012)).

policies was central to the District Court's analysis. For example, the District Court concluded that the named plaintiffs "have made it clear that they have no intention to hire or retain an employee who engages in homosexual or transgender conduct, and that they will enforce other personnel policies the EEOC prohibits." Order at *10. But in light of the class definitions, it is not possible to conclude that the rest of either class shares any such intentions and policies, let alone that all such intentions and policies are so similar that their lawfulness can be resolved "in one stroke." *Wal-Mart*, 564 U.S. at 349–50.

Similarly, the District Court concluded that the "All Opposing Employer Class" shared a common question about the lawfulness of "sex-neutral codes of conduct" that "have a disparate impact on individuals who exhibit homosexual or transgender behavior." Order at *20, *29. But in light of the class definition, it is not possible to conclude that the rest of the class has adopted any such codes of conduct, let alone that all such codes of conduct are so similar that their lawfulness can be resolved "in one stroke." *Wal-Mart*, 564 U.S. at 349–50.

### B.    Unless the contours of a class are reasonably clear, it will not be possible for a court to conclude that the class satisfies Rule 23(b)(2).

Although classes certified under Rule 23(b)(2) are not subject to the

predominance and superiority requirements of Rule 23(b)(3), the provision does impose requirements of its own, beyond a mere request for "final injunctive relief or corresponding declaratory relief." FED. R. CIV. P. 23(b)(2). As this Court has explained, Rule 23(b)(2) "'requires common behavior by the defendant towards the class,' such that 'class members . . . have been harmed in essentially the same way.'" *Yates v. Collier*, 868 F.3d 354, 367–68 (5th Cir. 2017) (quoting *M. D. v. Perry*, 675 F.3d 832, 845 (5th Cir. 2012), and *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012)). If a court cannot discern the boundaries of the class, it will not be able to evaluate whether the members of the class been harmed by the defendant's behavior at all, let alone that they have been harmed in essentially the same way.

To be sure, plaintiffs need not show that the harmful results of a defendant's conduct have fully materialized with respect to every class member. Some plaintiffs' claims involve allegations that the defendant's misconduct has exposed them to a substantial risk of harm, rather than a completed harm. Rule 23(b)(2) permits class certification in those circumstances, but only if the defendant's conduct creates a substantial risk of harm throughout the class, not just for the named plaintiffs. *See* FED. R. CIV. P. 23(b)(2) advisory committee's notes (1966 amendments) ("Action or inaction is directed to a class within the meaning of this subdivision even if

it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."); *see also M. D. v. Abbott*, 907 F.3d 237, 271 (5th Cir. 2018) (upholding the certification of a general class and one subclass for which the plaintiffs had established "a substantial risk of serious harm on a class-wide basis," but decertifying another subclass for which the plaintiffs had not established "class-wide constitutional harm").

This Court's case law recognizes those principles. For example, this Court upheld the certification of a Rule 23(b)(2) class challenging excessive heat in the Wallace Pack Unit, a prison operated by the Texas Department of Criminal Justice. *Yates*, 868 F.3d at 367–68. The class consisted of all current and future inmates incarcerated at that prison.[7] *Id.* at 359. The plaintiffs presented evidence, which the district court credited, showing that the defendants had failed "to reduce the risk of serious harm to a constitutionally permissible level for *any* inmate." *Id.* at 363 (emphasis in the original). This Court concluded that the plaintiffs' showing satisfied Rule 23(b)(2), reasoning that "[a]ll inmates . . . are subject to the *same* policy on

---

[7] Specifically, the class was defined as follows: "All inmates who currently are, or in the future will be, incarcerated at the Pack Unit, and who are subjected to TDCJ's policy and practice of failing to regulate high indoor heat index temperatures in the housing areas." *Yates*, 868 F.3d at 359.

climate control (*i.e.*, their housing units are not air-conditioned), all have the *same* heat-mitigation measures available to them (whether or not those measures are effective), and all are (allegedly) harmed in essentially the *same* way—*i.e.*, by exposure to a substantial risk of serious harm because of exposure to excessive heat." *Id.* at 368 (emphases in the original). Those conclusions would not have been possible if the class had been so ambiguously defined that it could have included a great number of individuals who were not and never would be incarcerated at the Wallace Pack Unit—because they were incarcerated at different prisons, for example, or because they had been released and would not be incarcerated again—and who therefore would face no risk as a result of the conditions at that particular prison.

The classes certified by the District Court in this case are ambiguously defined to that problematic degree. For example, a class consisting of employers that "oppose[] homosexual or transgender behavior" will include employers that balance their moral views and business priorities in a multitude of ways. A great many of those employers will seek to hire and retain any gay or transgender individuals they deem most qualified for a given position, regardless of their views about such behavior. Those class members cannot reasonably be said to be "harmed in essentially the same

way" as employers that have enacted policies against hiring gay or transgender employees, for example, or employers whose policies require their gay employees to remain celibate.

## III. The Absence of a Clear and Objective Class Definition Impedes the Orderly and Effective Administration of the Judgment in a Class Action Certified Under Rule 23(b)(2).

In the context of a Rule 23(b)(2) class action, the class definition serves to establish the contours of the plaintiff class and the scope of the defendant's obligations. Accordingly, a clear and objective class definition remains important long after the certification stage. Ambiguities in the definition of a certified class can create intractable problems with the interpretation and enforcement of the judgment.

Consider preclusion. "[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984). Accordingly, courts will frequently need to determine whether parties appearing before them fall within the definition of a certified Rule 23(b)(2) class that previously went to judgment. With regard to the class definitions at issue here, such a court would need to determine whether the party "opposes homosexual or transgender behavior," whether it "produc[es] a secular product," whether "faith may be

a motivating part of [its] mission[],” whether “[its] incorporating documents generally do not include a religious purpose,” and whether “religion plays an important role, but is not the sole mission of the organization.” Order at *14.

A court would face insurmountable difficulties with that task. So would the defendants, which would be hindered both in their understanding of the preclusive effect of the judgment and in their ability to comply with any injunctive relief. The defendants would have to guess, upon pain of contempt, whether the judgment required them to change their behavior toward a particular employer. Indeed, the extent of the ambiguity is such that some employers would not themselves be able to determine whether they are class members. As a result, those employers would not know whether they were precluded by those aspects of the judgment that were resolved in the defendants’ favor, or whether they were entitled to the benefits of any class-wide injunctive or declaratory relief.

It is no answer that an employer could choose whatever interpretation of the class definition suited it, thereby choosing whether or not it would be a member of the class. Allowing would-be class members to resolve an ambiguous class definition in their favor would disrupt the two-way preclusion enacted by the modern version of Rule 23(b)(2), under which “[a] properly certified class action . . . creat[es] a final result for both sides

regardless of who wins on the merits." Maureen Carroll, *Aggregation for Me, but Not for Thee: The Rise of Common Claims in Non-Class Litigation*, 36 CARDOZO L. REV. 2017, 2052 (2015). It would instead bring back the preclusive asymmetry enacted by a much earlier version of the class action rule, which allowed would-be class members to wait until after a decision on the merits before deciding whether they would be bound to the judgment. Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 COLUM. L. REV. 149, 175 (2003). The modern version of Rule 23 was designed precisely to avoid that type of "heads I win, tails you lose" scenario. *See* FED. R. CIV. P. 23(b)(2) advisory committee's notes (1966 amendments) (explaining that the revised rule would eliminate the possibility of "one-way intervention" because "the action will have been early determined to be a class or nonclass action, and in the former case the judgment, whether or not favorable, will include the class").

This case does not present any difficult questions of heightened ascertainability. The issue is much more fundamental: A clear and objective class definition is essential for future courts and parties to be able to determine the scope and preclusive effect of a Rule 23(b)(2) class action judgment. Such a definition is lacking here.

## CONCLUSION

For all of the foregoing reasons, amici respectfully submit that this Court should vacate the District Court's certification of both classes.

Respectfully submitted,

*/s/ Jane Langdell Robinson*
Jane Langdell Robinson, TBN 24062970
AHMAD, ZAVITSANOS & MENSING PC
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
jrobinson@azalaw.com

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of FED. R. APP. P. 32(a)(7) and FED R. APP. P. 29(a)(5) because this brief consists of 5,867 words as determined by Microsoft Word Office 365, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 in 14-point Georgia font.

*/s/ Jane Langdell Robinson*
Jane Langdell Robinson

## CERTIFICATE OF SERVICE

On June 7, 2022, I certify that I served a true and correct copy of this

Brief on all counsel of record pursuant to CM/ECF filing in compliance with

the Federal Rules of Appellate Procedure:

Bryan M. Boynton
Chad E. Meacham
Marleigh D. Dover
Charles Scarborough
Jack Starcher
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for Defendants-Appellees/Cross-Appellants, Equal
Employment Opportunity Commission et al.*

Jonathan F. Mitchell
Suite 400
111 Congress Avenue
Austin, TX 78701

Gene Patrick Hamilton
America First Legal Foundation
5th Floor
300 Independence Avenue, SE
Washington, DC 20003

*Counsel for Plaintiffs-Appellants/Cross-Appellees, Braidwood
Management, Inc., et al.*

*/s/ Jane Langdell Robinson*
Jane Langdell Robinson